# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

ALASKA FUR GALLERY, INC.,

Debtor.

Case No. A09-00196-DMD

Chapter 11

**Filed On 5/21/10**

## MEMORANDUM ON CONVERSION

First National Bank Alaska ("FNBA") has moved to convert this case to a case under chapter 7. For the reasons set forth herein, I will deny the motion.

FNBA seeks conversion on a variety of alternative grounds. First, FNBA seeks conversion for cause under 11 U.S.C. § 1112(b)(4)(J), for the debtor's failure to timely file a disclosure statement and plan. This court initially set the deadline of September 30, 2009, for the filing of a plan and disclosure statement.[1] Through stipulations between the debtor and FNBA, this deadline was extended to January 11, 2010.[2] The debtor filed its first disclosure statement and plan on January 11, 2010.[3] No other times have been fixed by the court for the filing of a disclosure statement and plan.

---

[1] Order Setting Deadlines and Hearing on Agreement for Use of Cash Collateral, entered Jul. 31, 2009 (Docket No. 105).

[2] *See* Orders entered Oct. 8, 2009 (Docket No. 130), Oct. 14, 2009 (Docket No. 132), Nov. 17, 2009 (Docket No. 140), Dec. 17, 2009 (Docket No. 150, and Jan. 5, 2010 (Docket No. 153).

[3] Debtor's Disclosure Statement, filed Jan. 11, 2010 (Docket No. 155); Debtor's Plan of Reorganization, filed Jan. 11, 2010 (Docket No. 157).

1

The debtor filed a first amended disclosure statement and first amended plan on January 27, 2010,[4] followed by a second amended plan and disclosure statement on April 14, 2010.[5] The debtor filed revised exhibits to the second amended disclosure statement and proposed revisions to the second amended disclosure statement On May 7, 2010.[6] All of these amendments were made by the debtor voluntarily and without any court imposed deadlines. There is no basis for conversion of this case under 11 U.S.C. § 1112(b)(4)(J).

FNBA also seeks conversion due to "continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[7] The burden of establishing grounds for conversion or dismissal of a chapter 11 case is on the party seeking such relief.[8] Here, FNBA has offered conclusory allegations of counsel for the proposition that the debtor is losing money. These allegations are contradicted by the debtor's profit and loss statements submitted with its second amended disclosure statement, which show net ordinary income of $160,509.13 for 2009,[9] and $52,083.21 for the period of January through

---

[4] Debtor's First Amended Plan of Reorganization, filed Jan. 27, 2010 (Docket No. 169); Debtor's First Amended Disclosure Statement, filed Jan. 27, 2010 (Docket No. 170).

[5] Debtor's Second Amended Disclosure Statement, filed Apr. 14, 2010 (Docket No. 194); Debtor's Second Amended Plan of Reorganization, filed Apr. 14, 2010 (Docket No. 195).

[6] Notice of Filing Revised Exs. to Second Amended Disclosure Statement, filed May 7, 2010 (Docket No. 213); Notice of Proposed Revisions to Second Amended Disclosure Statement, filed May 7, 2010 (Docket No. 214).

[7] 11 U.S.C. § 1112(b)(4)(A).

[8] Russell, *Bankruptcy Evidence Manual*, 2009-2010 Ed., § 301.82.

[9] Debtor's Second Amended Disclosure Statement (Docket No. 194), Ex. B at 5.

2

March, 2010.[10] In a footnote in a subsequent pleading, FNBA has taken issue with the debtor's reported profit for 2009, contending it is actually in the range of just $6,300.00 to $16,700.00.[11]

FNBA further argues that "[t]he debtor has lost money since it filed its petition. While it has made cash collateral payments totaling $157,200 on two of the five First National loans (Claims 24-28), the total of those five debts has increased by more than $105,000 in interest and expenses since the petition."[12] The debtor responds that it has paid all post-petition interest due FNBA through monthly adequate protection payments of $25,000.00.[13] The debtor also says the adequate protection payment actually exceeds the amount of interest accruing on the FNBA loans each month, and notes that one debt due FNBA is, at this point, projected to be paid off in full on the effective date, assuming the pending plan is confirmed.[14]

The only thing that is clear to the court at this point is that the debtor's actual profitability seems to be a moving target. It cannot be quantified on the basis of the present record. What is needed is the testimony of a qualified accountant to establish the debtor's

---

[10] Notice of Filing Revised Exs. to Second Amended Disclosure Statement (Docket No. 213), Ex. C at 3.

[11] FNBA's Obj. to Debtor's Current (April 14 Second Amended) Disclosure Statement, filed Apr. 29, 2010 (Docket No. 203), at 2, n.3.

[12] FNBA's Mot. to Convert, filed Apr. 2, 2010 (Docket No. 191), at 2.

[13] Debtor's Opp'n to Mot. to Convert, filed Apr. 22, 2010 (Docket No. 198), at 3-4.

[14] *Id.*

3

profitability. With all due respect to FNBA's counsel, they are not accountants. Nor is the court. Additionally, the requirements of § 1112(b)(4)(A) are in the conjunctive; FNBA must establish both "substantial or continuing loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation."[15] FNBA has not made a sufficient showing as to either factor. Its motion cannot be granted on such grounds.

In its reply brief, FNBA alleges there have been losses to the estate as a result of the bankruptcy journal entries made by the debtor's accountant, Kim Aasand. The revised balance sheet of the debtor does indicate a $7 million dollar decline in assets.[16] This decline is a result of the accountant's efforts to bring the debtor's books into conformity with generally accepted accounting principles. It does not represent a loss from operations. The revisions made by Aasand represent management's efforts to accurately depict the debtor's current financial state as realistically as possible. They are not grounds for conversion. If FNBA feels otherwise, it should hire an accountant and offer expert testimony on the point.

FNBA next contends cause for conversion exists because the debtor made pre-petition transfers to or for the benefit of its owners, their family members and their related companies, and the owners have failed to pursue such transfers. FNBA itemized these transfers in its earlier motion to obtain derivative standing to pursue avoidance claims on

---

[15] 11 U.S.C. § 1112(b)(4)(A) (emphasis added).

[16] The Inn at Whittier was carried on the debtor's balance sheet as an asset worth $4,592,000.00. The inn has been lost in foreclosure to FNBA and is no longer an asset of the debtor.

behalf of the estate.[17] FNBA estimated that the avoidance of such transfers could recover between $85,000.00 to more than $150,000.00 for the estate.[18] FNBA wants to pursue the avoidance actions. It states that it will limit its collection costs to 40% of the amount recovered, leaving a balance of $90,000.00 payable to the estate, assuming everything goes perfectly and all avoidance actions are recoverable. That conclusion is erroneous. H & H Development voluntarily returned $73,390.00 to the estate. This reduces the potential recovery for the estate, under FNBA's assumptions and assuming a best case scenario, to just $45,966.00. Additionally, under the debtor's second amended plan, the owners are voluntarily contributing $100,000.00 cash to the debtor at confirmation, and Hernandez & Associates is contributing real property valued at $364,250.00.[19] There is no point in pursuing avoidance actions that could potentially recover $45,000.00 for the estate when the primary targets of such actions are voluntarily contributing $464,250.00 to the plan. Nor is there cause for conversion under such circumstances.

    FNBA next alleges that the debtor's first amended plan "by all appearances" would forgive some $800,000.00 of net debt owed to the debtor by its owners, members of

---

[17] Mot. for, in the Alternative, (a) Appointment of Trustee, or (b) Appointment of Creditor's Committee with Authority to Pursue Avoidance Claims on Behalf of Estate, or (c) Granting FNBA Authority (Derivative Standing) to Pursue Avoidance Claims on Behalf of Estate, filed Dec. 10, 2009 (Docket No. 145).

[18] *Id.* at 11.

[19] Debtor's Second Amended Plan of Reorganization (Docket No. 195), at 8, Sections 2.2.2 and 2.2.3.

their families and others of their companies.[20] But that plan is no longer on the table, and I find no such provision in the debtor's second amended plan. Further, a review of the second amended plan indicates that there are over $700,000.00 in insider claims against the estate.[21] These claims are being subordinated until all other creditor claims are paid in full.[22] FNBA's conclusory statements regarding debt forgiveness are not supported at this point in the case, and do not provide a basis for conversion.

FNBA further argues this is "déjà vu all over again" because a prior chapter 11 case, the Inn at Whittier,[23] which also involved the debtor's owners, failed.[24] FNBA is comparing apples and oranges. This case is substantially different than the Inn case. This debtor owns valuable real estate and has an ongoing business with a history of profitability. Even though the Inn at Whittier failed, the debtor here may be able to confirm and perform a chapter 11 plan. The comparison of the two cases is groundless and does not provide a basis for conversion here.

In its reply brief, FNBA raises an additional ground for conversion: gross mismanagement of the estate under 11 U.S.C. § 1112(b)(4)(B).[25] As before, the burden of

---

[20] FNBA's Mot. to Convert (Docket No. 191) at 5.

[21] Debtor's Second Amended Plan of Reorganization (Docket No. 195), at 7.

[22] *Id.*

[23] Main Case No. A06-00121-DMD.

[24] FNBA's Mot. to Convert (Docket No. 191) at 5.

[25] FNBA's Reply on Mot. to Convert, filed May 3, 2010 (Docket No. 206). 1112(b)(4)(B).

6

proof is on FNBA. Subsection (b)(4)(B) focuses on the management of the *estate*. An inquiry under § 1112(b)(4)(b) "cannot include mismanagement by the debtor prior to the bankruptcy filing."[26]

FNBA somehow equates factors for piercing the corporate veil under Alaska law with a showing of gross mismanagement under federal law. That's a stretch and FNBA offers no authority for this novel proposition. FNBA alleges that the owners have sometimes used the debtor's cash for their own purposes. This may well have occurred in the past but there is no evidence of post-petition malfeasance. FNBA is not pleased that a related entity, H&H, has agreed to be liable for the debtor's pre- and post-petition legal costs to the debtor's special counsel, Don Bauermeister, as well as pay fees for the debtor's other professionals, Cabot Christianson and Kim Aasand, C.P.A. These fee agreements do not indicate that the debtor is being grossly mismanaged. Rather, they indicate that the debtor is being well managed and utilizing third parties to cover substantial legal costs. FNBA objects to the fact that the debtor will receive Skagway real property from Hernandez & Associates on the date of confirmation of the plan. Receipt of this property is beneficial, rather than detrimental, to the estate. It is representative of good management and not grounds for conversion of the case.

FNBA's final argument is that the debtors will suffer continuing loss or diminution of the estate and cannot reorganize. It again points to the debtor's balance sheets

---

[26] 7 *Collier on Bankruptcy* ¶ 1112.04[6][c] (15th ed. revised, 2010) (footnotes omitted).

to support this position.  As noted above, what is needed to determine this point is testimony of a qualified accountant.  FNBA also paints a dismal prospect for reorganization based on a falloff in the Alaska tourism market.  But it has offered no admissible evidence on this point.[27]  Again, this is an issue better addressed at a confirmation hearing with expert testimony.  There is insufficient evidence on this point to grant conversion at this time.

For the foregoing reasons, FNBA's motion to convert will be denied.  An order will be entered consistent with this memorandum.

DATED: May 21, 2010.

                                    BY THE COURT

                                    /s/ Donald MacDonald IV
                                    DONALD MacDONALD IV
                                    United States Bankruptcy Judge


Serve: C. Christianson, Esq.
       D. Bundy, Esq.
       R. Clifford, Esq.
       B. Moore, Esq.
       J. Beard, Esq.
       U.S. Trustee

       05/21/10

---

[27] The Anchorage Daily News article that FNBA has submitted to support this contention does note that the number of cruise ships to Alaska is down by 3 this year, but also points to some improvements which may increase the number of cruises in the future and indicates that "the worst may be over for Alaska."  *See* Attachment to FNBA's Reply (Docket No. 206).  This article provides no substantive basis for the court to conclude that the debtors will inevitably suffer continuing losses and be unable to reorganize.