# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

ALASKA FUR GALLERY, INC.,

Debtor.

Case No. A09-00196-DMD

Chapter 11

**Filed On 5/25/10**

## MEMORANDUM REGARDING DISCLOSURE STATEMENT

The debtor's second amended disclosure statement came before the court for hearing on May 6, 2010. I have reviewed the objections to the disclosure statement filed by First National Bank Alaska ("FNBA") and Export Development Canada ("EDC"), and the debtor's responses thereto. I conclude that the disclosure statement should be modified. The objections of FNBA and EDC to the disclosure statement will be sustained, in part, and the second amended disclosure statement will not be approved.

A disclosure statement must contain "adequate information."[1]  "Adequate information" is defined as follows:

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that

---

[1] 11 U.S.C. § 1125(b).

> would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest and the cost of providing additional information; . . .[2]

FNBA raises numerous objections to the second amended disclosure statement, starting with debtor AFG's income statements and projections. The bank complains that the debtor's income projections stop nine months short of the plan's five year term and inaccurately project the debtor's income. AFG has responded by submitting revised income statements and projections.[3] FNBA found these revisions inaccurate and contradictory as well.[4] The debtor replied to FNBA's criticism by asserting that its revised numbers were accurate.[5] I think we are moving beyond disclosure statement issues and on to plan feasibility issues with regard to the debtor's financial documents. Rather than continue this unproductive battle now, the dispute can be resolved in a very straightforward manner. In

---

[2] 11 U.S.C. § 1125(a)(1).

[3] Notice of Proposed Revisions to Second Amended Discl. Statement, filed May 7, 2010 (Docket No. 214).

[4] FNBA's Comments on Debtor's May 7 Revised Exs. C-E to Second Amended Discl. Statement, filed May 10, 2010 (Docket No. 216).

[5] Debtor's Response to FNBA's Comments to Revised Exs. C-E; Notice of Filing Further Revised Exs. D and E, filed May 12, 2010 (Docket No. 217).

its disclosure statement, AFG must add the following admonition at Article 4, preceding the Exhibits:

> First National Bank Alaska views the income statements, balance sheets and projections which the debtor has included in this disclosure statement as inaccurate. The bank contends that accurate financial statements would show that the debtor is consistently losing money and does not have the ability to perform in accordance with it's projections. The bank also contests the Bankruptcy Journal Entries which have been made by the debtor's accountant.

The real battle here is over the feasibility of the debtor's plan. FNBA can argue feasibility at a confirmation hearing.

FNBA notes that the debtor's working capital position has not been disclosed. It also alleges that the debtor has not explained how cash carryovers from year to year are to be treated. AK LBR 3016-1(c)(10)(G) requires a disclosure statement to contain "a description of the debtor's working capital position and any changes thereto expected to occur in the first twelve (12) months of the plan."[6] How much cash does the debtor have? What will happen to it following confirmation? These are legitimate concerns that must be answered. The debtor's financial statements do not adequately address these issues.

FNBA raises additional issues with regard to AFG's disclosure of debts to family members and related entities. It says these disclosures are inadequate. According to FNBA, $1.65 million in AFG assets disappear in the disclosure statement. I feel that the

---

[6] AK LBR 3016-1(c)(10)(G).

3

debtor should more thoroughly explain the reason for this discrepancy. FNBA further objects to certain of the bankruptcy journal entries, arguing that they eliminate a $1.1 million asset, a debt from H & H to AFG. The debtor should explain the loss of this apparent asset as well.

FNBA objects to the transfer of the "New Skagway Property" from Hernandez & Associates to the debtor. According to the bank, this asset cannot be transferred to AFG because Hernandez & Associates, which is also in bankruptcy, owes it fees and costs from the state court litigation. I view this as a confirmation issue. The debtor should disclose, however, that FNBA objects to the transfer of this property to the debtor.

FNBA alleges that the debtor has failed to adequately disclose the cause of its financial hardships. The bank contends the economic downturn and the decline in Alaska tourism and cruise ship trade, rather than the loss of the Inn at Whittier, are what pushed AFG into bankruptcy. FNBA complains that AFG hasn't included these factors in its income projections. I feel this is a confirmation issue, however. Further disclosures regarding the reason for AFG's decline in revenues are not required.

FNBA next maintains that AFG has failed to make a number of disclosures with regard to the pending state court litigation between the bank and the debtor, including: 1) no disclosure of the first trial and the resulting verdict; 2) no disclosure of the fees and costs which have been incurred or that could be incurred by FNBA; 3) no disclosure of the litigation costs incurred by the debtor so far or estimate of costs for completing the litigation; and 4) no discussion of how pursuit of the litigation will benefit the debtor and the estate.

I agree with FNBA that all of these disclosures should be made. The disclosure statement should also discuss the potential of a second adverse judgment and how such a judgment would impact the debtor and its reorganization efforts.

FNBA further alleges that the treatment of AFG's owners is not discussed in the disclosure statement. The treatment of equity interests in the debtor must be described in the disclosure statement. FNBA also contends AFG's owners owe the debtor $1.6 million. The disclosure statement should set forth AFG's rationale in eliminating this receivable.

EDC has submitted additional objections to the disclosure statement. It seeks appraisals of all the debtor's real property holdings. Given the many delays which have accompanied this proceeding and the extensive costs that would accompany such appraisals, I will not require the debtor to obtain formal appraisals of its real property holdings. I do feel that some independent source of valuation is necessary, however, and I will therefore require the debtor to obtain brokers' opinions of value relative to its present real property holdings as well as the Skagway property which is to be transferred to the debtor on confirmation. Copies of the broker's opinions shall be annexed to the revised disclosure statement.[7]

EDC raises issues relative to the debtor's officers and directors. It wants to know if the debtor's owners receive board of directors fees for their work for the corporation or are paid for actual work. It also wants to know who the new officers and directors of the

---

[7] These values will help determine whether or not the five year balloon set forth in the plan is a realistic goal, as well provide evidence for the best interests of creditors' tests.

reorganized debtor will be. These are reasonable requests, and this information should be included in AFG's disclosure statement.

EDC also contends the debtor's second amended plan is not confirmable. It says the plan violates the absolute priority rule and that it is not feasible. These objections are better left for the confirmation hearing; they will not be addressed here.

Finally, the court makes two additional points regarding the second amended disclosure statement. First, AK-LBR 3016-1(c)(10)[L] requires a disclosure statement to include the "source of financial information in paragraphs [A]–[K] hereof and the qualifications of the source."[8] The second amended disclosure statement lacks this information. I encourage the debtor to utilize the services of their accountant in the preparation of their financial documents. The accountant should be the source of the financial documents, not the debtor's attorney or his paralegal. I also encourage FNBA to utilize an accountant to review the debtor's financial documents. Second, I note that the debtor has not submitted either a summary or a copy of its 2009 federal tax return. A summary of the tax return is required by AK–LBR 3016(c)(10)[A]. The disclosure statement cannot be approved without it.

For the foregoing reasons, the debtor's second amended disclosure statement will not be approved. It must be modified to include the information specified above. An order will be entered consistent with this memorandum.

---

[8] AK LBR 3016-1(c)(10)(L).

DATED: May 25, 2010.

          BY THE COURT

          /s/ Donald MacDonald IV
          DONALD MacDONALD IV
          United States Bankruptcy Judge

Serve: C. Christianson, Esq.
      D. Bundy, Esq.
      R. Clifford, Esq.
      B. Moore, Esq.
      J. Beard, Esq.
      U.S. Trustee

      05/25/10