# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

ALASKA FUR GALLERY, INC.,

Debtor.

Case No. A09-00196-DMD
Chapter 11

**Filed On 7/15/11**

## CONFIRMATION MEMORANDUM

The debtor's sixth amended plan and Export Development Canada's request for allowance of administrative expense priority duly came before this court for hearing on July 12 and 13, 2011. The contested matters are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (0). This court has jurisdiction pursuant to 11 U.S.C. § 1334(b) and the district court's order of reference. The debtor's sixth amended plan will be denied confirmation. The hearing on Export Development Canada's request for allowance of administrative priority will be continued without date.

The background of this controversy is set forth on pages two through five of my memorandum regarding disclosure statement, confirmation of plan and related motions filed on April 29, 2011 and incorporated by reference.[2] In an order accompanying the memorandum, I denied approval of the fourth amended disclosure statement and plan.[3] I also required the debtor to obtain confirmation of a plan of reorganization by July 28, 2011 or face conversion of the case to Chapter 7.

---

[2] Docket No. 342.

[3] Docket No. 343.

The debtor has remedied every impediment to confirmation outlined in my April 29, 2011 memorandum with one major exception: § 1129(a)(3). In my previous memorandum, I concluded that the plan's proposed transfer of assets from Hernandez and Associates, LLC ("H&A") to the debtor violated state law and 11 U.S.C. § 1129(a)(3).[4] In a second attempt to transfer assets to the debtor, paragraph 2.2.3 of the sixth amended plan now states: "Provided that an appropriate authorizing order is entered in the H&A case, AFG shall cause H&A to convey the Skagway Property to AFG."

The debtor has filed a variety of motions and objections to claims in the H&A case. This court sustained objections to four claims.[5] Two of the claims were for First National loans that have been paid off. Two additional claims were submitted by Kirk Loeffler and the IRS for tax liabilities arising from The Inn at Whittier. Those claims were also disallowed. The debtor seeks court approval of its proposed treatment of the remaining creditors. It proposes to pay the IRS $2,626.20 on approval of the motion. It offers nothing for First National's remaining two claims. The first claim is for a deed of trust note on 359 S. Franklin in the approximate amount of $1.44 million. The second claim is for litigation costs. First National hasn not updated its original cost claim of $852,000.[6] An updated claim could approach $2 million. The costs are vigorously contested and will be decided in state court. The debtor and H&A argue that H&A is winding up its affairs and that the AFG

---

[4] Pp. 16 – 20, Docket No. 342.

[5] Case No. 09-00516, Docket No. 83.

[6] Claim No. 29-1.

2

Chapter 11 plan provides for "adequate provision for payment to creditors" under A.S. 10.50.425. First National vehemently disagrees. It claims that it is effectively being robbed of real property worth $435,000 and cash of over $51,000.00 through the transfer of the H&A Skagway property and cash to the debtor.

I can not ignore this possible injury to First National, and the debtor has offered no viable alternatives. Nor can I ignore Alaska's statutory restriction on distribution. If H&A makes the transfers, it will be unable to pay its debts to First National, which are well past due.[7] Such a transfer is prohibited. The debtor's Chapter 11 plan does not provide "adequate provision for payment."[8] The promises of a bankrupt, insolvent co-debtor to repay the loan over a five year term with a balloon payment are not what the state statute demands. The debtor's sixth amended plan continues to violate § 1129(a)(3).

The solution to this problem is obvious: comply with state law and pay the proceeds of the Skagway property and the H&A cash to First National for application to First National claim Number 3-1 in the H&A bankruptcy. Use the Anchorage lot sale proceeds to cover the unsecured creditors and make up any cash differential to them from (1) cash surpluses arising from fur sale operations or (2) decreased monthly payments to First National following application of the mini-balloon payment next spring. If the debtor is capable of making these changes while retaining the support of unsecured creditors, it will have a confirmable plan. The present plan is not confirmable.

---

[7] A.S. § 10.50.305(a)(1).

[8] A.S. § 10.50.425(1).

3

DATED: July 15, 2011.

> BY THE COURT
>
> /s/ Donald MacDonald IV
> DONALD MacDONALD IV
> United States Bankruptcy Judge

Serve:    C. Christianson, Esq.
             B. Moore, Esq.
             D. Bundy, Esq.
             R. Clifford, Esq.
             J. Beard, Esq.
             U. S. Trustee

07/15/11